LEWIS, APPELLANT, *v.* BUREAU OF UNEMPLOYMENT COMPENSATION ET AL., APPELLEES.

(No. 792101—Decided February 7, 1972.)

Common Pleas Court of Cuyahoga County.

*Mr. Harry J. Dworkin,* for appellant.
*Mr. William J. Brown,* attorney general, and *Mr. Gerald N. Mauk,* assistant attorney general, for appellees.

HITCHCOCK, J. (By assignment from Paulding County.)

On April 16, 1963, Leonard Frank Lewis, by reason of lack of work, last worked for Curtiss-Wright Corp., in Cleveland, thus ending a continuous period of employment which began September 11, 1950. Lewis previously worked for this employer some five or six years. On April 17, 1963, he applied for unemployment compensation benefits for himself and dependent spouse, saying he was married to and living with his wife, Alberta Lewis, who was self-employed, and that "my wife has a small business (delicatessen store) her average wage is *about* $25.00 per week." (Emphasis supplied.)

Item 19 of the claim form entitled "Application for Dependency Allowance" contains, inter alia, this paragraph:

"A 'dependent spouse' means your legally married wife or husband, who is living with you and is being wholly or chiefly supported by you. To apply for additional allowance for a dependent spouse complete item 'A' below."

For the year April 1, 1962, through March 31, 1963, Lewis had gross earnings in forty-seven weeks totalling $4,423.23 or an average of $94.14 per week worked or $85.06 per week for the calendar year. In his first quarter in this benefit year he had his highest earnings, amounting to $1,231.02.

On June 5, 1963, an examiner from the Bureau of Unemployment Compensation (BUC) interviewed appellant about his claim for a dependent wife and he gave a written statement which reads in part:

"* * * My wife is the only one that operates the store. The average weekly income for wife could vary from $16.00 a week up to $35.00 a week. At the present time the weekly income is $30.00 and it usually is in warmer weather. During earlier part of 1963 the average weekly income for the store could vary from $30.00 to $35.00 a week, usually higher in colder weather. I would help my wife out in operating the store whenever she had personal business to do. I would work about an average of one hour to one

hour and a half each day. I would not be paid for the time worked. At present time the store is up for sale.''

· On this occasion Lewis executed a ''Supplementary Questionnaire Pertaining to Dependents Claimed'' wherein he answered, ''All.'' to the question, ''How much of the support (cost of living) of your spouse claimed as a dependent has been personally furnished by you?'' Lewis showed this examiner proof of his marriage to his wife on July 29, 1961, in Cleveland. The examiner ordered an investigation re ''wife's earnings,'' but not as to her ''support.''

On August 8, 1963, an investigation report was filed reporting claimant's wife was interviewed on July 31, 1963. Inter alia, the report states:

''* * * Now this woman proved to be easily agitated and very emotional and while trying to interview her she kept referring to the fact that her attorney had advised her that it was not necessary to show me any of the records pertaining to her business. Finally I did persuade her to look up what records she had available and it was determined that she only had the records for her operations during the month of April, 1963. Now these records listed her total sales for the month of April as $2233.35. Her gross expenditures were $1971.31. Therefore, the net profit from the business was $262.04. I extracted a promise from this woman that she would give the claimant the records from January through March, 1963, and that he would bring them to the Investigation Office.

''On August 2, 1963, the claimant reported to the Investigation Office and upon examining the records for the Lewis Delicatessen the BUC 482-A wage form was completed. Now for the month of January, 1963, business showed total sales of $2322.05; expenditures $1836.17 making a net profit for this month of $385.88. For the month of February, 1963, the total sales were $1878.60; expenditures were $1765.65 making a total profit for this month of $112.95. For the month of March, 1963, total sales were $2040.15 and expenditures were $1820.82 making a total profit of $219.33 for this month. * * *''

On this same August 2nd, claimant gave a written affidavit after being cautioned by the investigator that he was not obligated to make any statement, that he had been promised no immunity nor given any inducement, and was advised of his right to counsel, in pertinent parts, as follows:

"I am presenting the records for the Lewis Delicatessen for Jan. thru Apr. of 1963, these records indicate that the net profit for this business is as follows:

|       | Net Profit | (Monthly) (per week average—supplied) |
|-------|------------|----------------------------------------|
| Jan. - | $385.00   | ($89.53) |
| Feb. - | 112.95    | ( 28.24) |
| Mar. - | 219.93    | ( 51.00) |
| Apr. - | 262.04    | ( 60.94) |

(Average, all weeks $52.03)

"On my application date 4-5-63 I claimed a dependency allowance for my wife Alberta Lewis who owns and operates above business with indications she averaged approximately $25.00 weekly in this business. I admit the records indicate she is averaging much more, however I merely estimated the amt. I did not actually know what my wife was averaging.

"I received a yellow 450 weekly reporting book of instructions. This was my 1st application for unemployment compensation. I am 58 years of age, married, no dependent children, in good health, 11th grade education, currently unemployed and certifying for benefits."

The court notes the record fails to negative the distinct possibility that the "net profit" as found above, was not properly further reducible by accrued liabilities not indicated in current expenditures by way of depreciation, insurance, and taxes. Applicant did not keep his wife's books and there is no evidence she ever told him the precise amount of her income.

The record fails to establish the slightest indication that applicant's wife was not in fact "* * * at the beginning of * * * (claimant's) current benefit year" * * *

"living with and being wholly or chiefly supported by * * * (him)'"[1]—just prior to his layoff. The record does not indicate that the wife used so much as 1c of her earnings or other means for her own support when her husband was regularly engaged in covered employment. It is certain she had no duty to support herself and was entitled to accumulate for herself as her own separate property, all earnings she might receive while living with and being supported by her husband. Claimant said that when he was working his wife received "all" her support from

---

[1]Claimant's right to a $5.00 weekly dependency allowance in addition to his $42.00 weekly benefit was governed by R. C. 4141.30, as per The Act of July 23, 1959, effective October 16, 1956, which remained in effect until amended effective October 20, 1963. See 128 O. L. 1308 (1327), Sec. 1 and 130 O. L. 976, Sec. 1.

As in effect April 17, 1963, the pertinent portion of R. C. 4141.30 read:

"(D) * * * *As used in division (D) of this section 'dependent spouse' means any legally married wife or husband of the individual in question who, at the beginning of such individual's current benefit year was living with and being wholly or chiefly supported by such individual.* If both a husband and wife qualify for benefits with respect to the same week, only one of them shall be entitled to the additional allowances provided in division (D) of this section." (Emphasized words were added to this section by the Act of July 23, 1959.)

Apparently the Ohio legislature has recognized that R. C. 4141.30 as written in 1959, was not being administered as written for in 132 O. O. S 237, Sec. 1 and effective 12-31-67, thus oft amended Chapter 4141 was amended again so that now R. C. 4141.30, in pertinent part reads:

"(E) * * * As used in this division 'dependent' means: * * *

"(2) The legally married wife or husband of the individual claiming benefits for whom more than one-half the cost of support has been supplied by such individual for at least ninety consecutive days, or for the duration of the marital relationship if it has existed for less than ninety days, immediately preceding the beginning of such individual's current benefit and such wife or husband was living with such individual and had an average weekly income, in such period, not in excess of twenty-five per cent of the claimant's average weekly wage, or thirty dollars, whichever is less.

"(3) If both the husband and wife qualify for benefit rights with over-lapping benefit years, only one of them may qualify for a dependency class other than A."

him and there is not a scintilla of evidence to indicate this statement is untrue.

R. C. 3103.03, which has since October 1, 1953, remained unchanged in this respect reads:

"*Duty of husband to support family.*

"The husband must support himself, his wife, and his minor children out of his property or by his labor. If he is unable to do so, the wife must assist him so far as she is able. If he neglects to support his wife, any other person, in good faith, may supply her with necessaries for her support, and recover the reasonable value thereof from the husband unless she abandons him without cause."

The court has been unable to discover any Ohio authority to the effect that this section is not effective or has some meaning at odds with the common, everyday meaning of its words. Moreover, the court has been unable to discover any Ohio authority to the effect that a wife has any duty to support herself unless her husband is unable to do so, or any Ohio law denying a wife full freedom to devote such portion of her earnings or other means as she may choose to her own support.

There is no indication that claimant ever was informed as to what figure was critical in making his claim for a "dependent spouse" when he stated thereon that his wife received "about $25.00" per week from self-employment. The transcript of the referee's hearing held September 25, 1963, at Page 23, line 10, reveals this testimony of the investigator:

"* * * I think the law specifies that if the spouse or the wife has income that she would qualify as the claimant's dependent if she did not earn *over and above two-thirds of the claimant's benefit amount.*"

As this claimant's benefit amount in 1963 was $42.00 per week, it seems likely that if claimant's application had indicated his wife's weekly income at more than $28.00 per week, no dependency allowance would have been granted, apparently by reason of some commission rule, regulation or practice with which the court has not been favored.

Consequently, this court must presume it had no substance such that applicant was charged with notice of it.

Despite the law and facts just recited, the Administrator, BUC, on August 22, 1963, rendered his decision and mailed a copy thereof to claimant reading:

"RE: OHIO U. C. APPLICATION FILED ON APRIL 17, 1963

"When you filed the above application you signed an affidavit that Alberta Lewis was your legally married wife, that she had an income of $25.00 per week from the operation of a store and that she was chiefly supported by you. As a result of an investigation, it is now a part of the record that the above individual was operating the store as of the benefit year beginning date of your claim and that she had income in an amount which would not qualify you as being her chief support. It is, therefore, held that you made fraudulent misrepresentation with the object to obtain additional benefits in the form of dependency allowance to which you were not entitled.

"Your claims for weeks ending April 20, 1963 through June 15, 1963, July 6, 1963 through July 27, 1963, are hereby cancelled and it is hereby ordered that you make restitution to the Ohio Bureau of Unemployment Compensation in the amount of $235.00. It is further ordered that benefits under the Ohio Act be denied you from July 28, 1963 through July 25, 1964. (Section 4141.35, Ohio U. C. Law.)

"Mail your check or money order for $235.00 promptly to the attention of the Investigation Department at the above address. Your Social Security number must accompany your payment."

The court has been unable to find either in the Revised Code or in Ohio Jurisprudence 2d any definition of "chiefly supported" or "chief support."

As noted in the footnote, *supra*, the statute defines the term "dependent spouse" and the only issue made here is whether or not Alberta Lewis was being "wholly or chiefly supported" by claimant" "at the beginning of his current benefit year" which must mean Sunday, April 14, 1963, as per R. C. 4141.30 (R) then in effect.

The term "dependent" in 1963 and for some years prior

thereto, was defined in the Internal Revenue Code (I. R. C.) 26 U. S. Code, Section 152 (a) as being an individual of specified relationship *other than spouse* ''* * * over half of whose support, for the calendar year in which the taxable year of the taxpayer begins was received from the taxpayer. * * *.''

When the Ohio Legislature passed the Act of July 23, 1959, which governs this controversy, it must have intended—in the absence of qualifying language—that ''chief support'' meant what it meant to the Internal Revenue Service where the term then was most widely used in a legal sense.

Turning to Prentice Hall, Federal Tax Guide, Editorial Volume, 1963, we find it said under Paragraph 3511:

*Support Test—*

''* * * One of the tests taxpayer must meet to get the exemption is the 'support' test. Taxpayer must furnish *over* half the dependent's total support for the calendar year in which the taxable year of the taxpayer begins. Sec. 142 (a). * * *

''A dependent's total support is the entire amount of support he receives from all sources including amounts he contributes to his own support. Amounts he contributes are counted, even though they come from exempt income such as social security benefits.

''The mere fact that a dependent *has income of his own is not controlling*. Such income is counted as a contribution to his own support *only if he uses it for that purpose*. * * * (Emphasis supplied.)

''Although the Code used the word 'support' it doesn't define it. The Regulations list various items that are considered support, but otherwise contain no inclusive definition. The listed items include food, shelter, clothing, medical and dental care, education and the like. Reg. Sec. 1.152-1. Although these items are of the kind usually regarded as 'necessities' this is not a conclusive indication that 'support' is so limited. Some cases have stressed the fact that particular items were necessities; others have not. (Citations omitted.)''

Ohio wives have no obligation to support themselves unless their husbands are unable to do so. Their earnings and other wealth are their separate property. The BUC in this case failed to negative with any probative evidence that claimant was not, at the beginning of his current benefit year "wholly" supporting his wife as he claimed; and it never ascertained what, if any, portion of her earnings she contributed to her own support. The BUC equated "chief support" solely with its determination that the wife had roughly twice as much average income per week, the final quarter of claimant's base period year, as her husband thought she had. Nor do the circumstances shown by the evidence establish that claimant should have had a more accurate knowledge of his wife's current income. There is not the slightest indication that claimant husband ever truly knew them—and during four of the seventeen weeks ending April 30, 1963, his wife's weekly income did average $28.24 which is certainly "about $25.00."

Finally it would appear in this case that the injunction of R. C. 4141.46, saying "Sections 4141.01 to 4141.46, inclusive of the Revised Code shall be liberally construed," was clearly violated by the BUC even if it were lawfully ascertained that Alberta Lewis was not being "wholly or chiefly supported" by her husband.

The BUC, never having negatived in any way that Alberta Lewis was not "the legally married wife" of claimant who "at the beginning" of claimant's "current benefit year was living with and being wholly or chiefly supported by" him, the decision of the referee for the Board of Review, BUC, affirming the administrator's decision of reconsideration dated August 27, 1963, which refused to disturb the administrator's finding of August 22, 1963, finding appellant not entitled to benefits for a dependent spouse, demanding return of $235.00 paid, and denying benefits from July 28, 1963 through July 25, 1964, is unlawful and unreasonable, and will be reversed.

*Judgment for appellant.*